BOWMAN *v.* STATE.

[73 South. 787, Division B.]

LARCENY. *Evidence. Sufficiency.*

Under the facts in this case the court held that the evidence was not sufficient to show beyond all reasonable doubt the guilt of the defendant of the larceny charged.

APPEAL from the circuit court of Lafayette county. HON. J. L. BATES, Judge.

Jim Bowman was convicted of larceny and appeals.

Appellant was convicted of the crime of larceny, sentenced to a term of two years in the state penitentiary, and appeals. He was indicted by the circuit

court of Lafayette county for the larceny of a "certain red and white spotted horned steer being then and there the personal property of J. P. Young, and of the value of forty-five dollars." In attempting to make proof, the state introduced Mr. Young, the owner of the lost animal, and one Mr. Terrell. The testimony of Mr. Young tends to prove that he owned a red and white ox, between three and fours years old; that he had broken the ox to work some time in the spring, and soon thereafter, in May, 1915, he put the animal in his pasture about one and one-half miles from his home and about six miles from Water Valley. Sometime about the middle of August, Mr. Young went to the pasture for this young ox, for the purpose of doing some work, and missed the animal. He immediately began to make inquiries, and, according to his own statement, rode over two counties in search of the missing ox. He finally got some clue or information that some days prior to the time of his inquiry, and about the time he went to the pasture in search of the animal, an ox's tracks had been seen on the Water Valley and Oxford road, going west; and on this information Mr. Young states that he went to Water Valley and inquired of Mr. Terrell, the state witness, who advised him that Jim Bowman, the appellant, had butchered an animal answering the description. Mr. Young then called on appellant, a negro living in the town of Water Valley and operating a negro restaurant there, and asked appellant if he had at any time that season butchered an ox. It is the testimony of Mr. Young that appellant denied butchering an ox. Appellant explained that he did not regard the animal he did butcher, as hereinafter shown, as an ox, but as a "yearling."

The prosecutor swore out an affidavit against the defendant and had him arrested on a charge of larceny of the animal. Mr. Young further testifies that he went with a negro who helped butcher an animal for

appellant in August, and dug up the head which the negro servant pointed out as the head of a steer butchered by the defendant; that when they dug up the head it was found that the horns had been removed in the process of butchering, and the horns could not be found. Mr. Young was unable to identify the head as the head of the ox he was searching for. No evidence of any mark or brand by which the head could be identified was introduced. The testimony, as a whole, shows that appellant did butcher a red and white spotted steer one day in August, 1915, and did so under the following circumstances: Appellant one Saturday morning advised Mr. Terrell, who was a white man living out in the country from Water Valley, and who had at times before that sold some pork to Jim Bowman for use in and about his restaurant, that he (Bowman) had a good "beef" tied up in his barn, and inquired if Terrell could use one-half of it when it was slaughtered. Terrell responded that he would drive over and look at the animal, and did so in company with another white man. Terrell represented that he would take one-half of the meat when and if butchered by a man who knew his business. The parties then agreed upon a Mr. Jack Conway, a white man, to do the butchering. Conway, assisted by a negro helper, then butchered the animal and divided the meat between appellant and Terrell; and the negro helper, it seems, as a matter of sanitation, and not for any purpose of concealment, buried the head. By an understanding had between appellant and Terrell the latter took charge of the hide, and sold it for $5, and reported the proceeds to appellant. Appellant claimed to have purchased the animal so butchered from a negro by the name of Andrew Davis, who lived some fifteen miles east of Water Valley in Calhoun county. On the trial of the case Andrew Davis was introduced as a witness in behalf of appellant, and corroborated the statement of appellant that he

(Davis) sold appellant a young red and white spotted yearling that dressed three hundred and thirty pounds when butchered. Andrew Davis claims that he had this animal "in a pasture at Bill Steen's, where he bought it;" that he carried it to Water Valley one Friday night and sold it in settlement of a debt of five dollars, which he had borrowed before that time, and for a further cash consideration, amounting, in all, to about twenty-two dollars. It seems that Andrew Davis was also indicted for the larceny of the same animal. Mr. Young at one place in his testimony states that his ox was not "spotted," but was a red and white animal, the white predominating. There is no evidence tending to show that appellant or any one else actually took Mr. Young's ox from the pasture, or that appellant was in possession of any kind of an animal, except as indicated.

Appellant relies upon two propositions: First, that no crime whatever is shown; and, second, that; if any crime whatever is shown, no venue is proven. Complaint is also made of one instruction given the state.

*Falkner, Russell & Falkner,* for appellant.

*Ross A. Collins,* Attorney-General for the state.

Stephens, J., delivered the opinion of the court.

In our opinion the facts do not show beyond a reasonable doubt that the defendant is guilty of the crime charged. We have carefully read the entire record, and our judgment is based on all the testimony in the case. The proof does not show that appellant was seen anywhere about the pasture of Mr. Young, or that he carried to Water Valley any animal whatever. Appellant lives in the town of Water Valley, and operates there a negro restaurant, and, on account of

the business he is engaged in, occasionally buys fresh meat. The fact that he operates a restaurant might have added to the suspicion that he was guilty. As a matter of fact, the conviction is based more on suspicion than positive proof. The conduct of appellant in arranging with Mr. Terrell to take one-half of the dressed meat, the manner in wheich he had the animal butchered, and the way in which he disposed of the hide are all consistent with good faith. There was no concealment, and no effort to conceal anything. Responsible white men handled the transaction. The best way to identify the animal would be by means of its hide. This positive and continuing evidence of identification was not destroyed by appellant; but, on the contrary, the hide was turned over to Mr. Terrell, the state witness, to be offered on the market and disposed of to the best advantage there at Water Valley. There is no positive evidence that the animal slaughtered at the instance of appellant is the identical animal lost by Mr. Young. It may have been the same animal, but the proof does not establish this fact beyond a reasonable doubt. It is possible that the ox which Mr. Young lost strayed from his pasture through no criminal agency whatever, and just what did become of the animal is largely a matter of speculation.

Under this view of the facts, we need not comment upon the alleged failure to prove venue, or upon the instruction complained of.

*Reversed and remanded.*